## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAIME HERNANDEZ, Individually and for Others Similarly Situated,<br>        Plaintiff, | Case No. 2:21-CV-00632 |
| v. | Jury Trial Demanded |
| CRSC CORPORATION<br>        Defendant. | Collective Action |

### JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Jamie Hernandez and the Opt-in Plaintiffs ("Opt-in Plaintiffs"), (collectively, Plaintiffs) and CRSC Corporation ("CRSC") (collectively, the "Parties") submit this joint motion for approval of the Parties' settlement of Plaintiffs' claims brought against CRSC under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq, and the Virgin Islands Fair Wage and Hours Act ("VIFWHA"), 24 V.I.C § 1 *et seq*. The Parties' Compromise Settlement Agreement and Release (the "Settlement Agreement"), Ex. 1, represents a fair and reasonable resolution of a bona fide dispute over the FLSA claims and meets the standards for judicial approval. The Court should approve the agreement in full.

The Parties' Settlement Agreement provides Plaintiffs with a reasonable recovery in light of the risks inherent in continued litigation and trial. CRSC has defended the claims asserted in this lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour law. Given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of this settlement, the Parties' Settlement Agreement is in both parties' best interest. Accordingly, the Parties respectfully request the Court approve the Settlement Agreement, Ex. 1, in full.

### 1. Procedural History

Hernandez filed this putative collective action on March 31, 2021, on behalf of himself and other similarly situated employees of CRSC under FLSA and WIFWHA who were paid a project rate and per diem without overtime compensation for hours worked in excess of forty in a workweek in violation of the FLSA. Doc. 1. CRSC denied Plaintiffs' allegations and raised several affirmative defenses, including assertions that (1) Plaintiffs were not similarly situated, (2) Plaintiffs were paid everything they were owed under applicable law, including FLSA or state law, (3) Plaintiffs were barred by the statute of limitations, and (4) CRSC acted in good faith. Doc. 30. Plaintiffs moved to strike some of Defendant's affirmative defenses, Doc. 32, after the Parties conferred and came to a resolution. Doc. 34. Defendant amended its answer in accordance. Doc. 37.

On January 11, 2022, the Parties entered a Joint Stipulation and Proposed Order Regarding Certification. Doc. 46. Notice was sent to "[a]ll employees of CRSC, LLC who received a project rate without overtime during the past 3 years." *Id.* The Court approved the Stipulation for Certification on January 12, 2022. Throughout the case and to the end of the notice period, Plaintiffs had 51 opt ins. Doc. 4; Doc. 5; Doc. 6; Doc. 19; Doc. 48; Doc. 49; Doc. 51; Doc. 52; Doc. 58; Doc. 61; Doc. 62; Doc. 64; Doc. 69; Doc. 71; Doc. 77.

Plaintiffs filed an unopposed First Amended Complaint on April 21, 2022 adding in claims under the Puerto Rico Wage Payment Statute ("PRWPS"), 29 L.P.R.A. § 171, *et seq.*, and § 271, *et seq.* Doc. 65. Defendant filed its Answer to the First Amended Complaint on May 5, 2022. Doc. 70. The Parties then asked the Court to continue the scheduling deadlines and re-set the trial date so they could complete discovery and explore possible resolutions of the case. Doc. 72. The Court granted the motion to continue and reset on July 28, 2022.

The Parties then exchanged extensive discovery, including thousands of relevant documents that made them intimately knowledgeable of the claims and defenses in this case and set multiple

depositions. After spending months gathering relevant data regarding Plaintiffs' claims, the Parties began settlement negotiations, ultimately reaching an agreement on March 1, 2023. On April 20, 2023, the Parties executed a formal Settlement Agreement, Ex. 1, that the Parties now request the Court approve.

### 2. Summary of the Settlement Agreement's Key Terms.

#### a. The Gross Settlement Fund.

As set forth in the Settlement Agreement, Ex. 1, the Parties have reached a settlement that provides each Plaintiff with a reasonable recovery of their unpaid overtime claims. The settlement amount includes the settlement payments to Hernandez and the Opt-in Plaintiffs, Class Counsel's attorneys' fees, Class Counsel's out-of-pocket litigation expenses, and a Service Award to Hernandez.

Under the Settlement Agreement, Class Counsel shall receive their attorneys' fees of a percentage of the Gross Settlement Amount that is routinely approved by courts. Likewise, Class Counsel shall receive reimbursement for the reasonable costs expended during this litigation. The Settlement Agreement also provides Hernandez with a service award to compensate him for his service as class representative. All attorneys' fees and litigation expenses are included in the Gross Settlement Amount, and CRSC shall not make any payment beyond the Gross Settlement Amount.

The Gross Settlement Amount is broken down based on:

| | |
|---|---|
| **Gross Settlement Amount** | **$125,000** |
| Attorney's Fees | $50,000 |
| Attorney's Costs | $5,000 |
| Hernandez's Service Award | $4,000 |
| **Net Settlement Amount** | **$66,000** |

#### b. The Net Settlement Amount.

The Parties agreed to a *pro rata* allocation of the Net Settlement Amount based on the number of workweeks worked by the Plaintiffs during the applicable Class Period. To calculate the *pro rata* settlement allocations, Class Counsel calculated CRSC's share of each employee's alleged back wages

under the FLSA based on the number of workweeks they worked during the three-year statutory period, using pay data the Parties obtained from CRSC. Using this damage model, Class Counsel applied Hernandez's and each Opt-in Plaintiff's *pro rata* share to the Net Settlement Amount to determine the settlement payment for each. Class Counsel calculated the alleged unpaid overtime by taking the workers' total weekly pay divided by their total hours worked for the corresponding week to produce an hourly rate. Class Counsel then took the hourly rate and divided it by two and multiplied it by the number of alleged overtime hours to calculate total overtime owed. This formula was applied on a weekly basis for each of the Plaintiffs. A percentage was then assigned to each Plaintiff by taking the total amount of alleged overtime owed for each Plaintiff and using that number as a numerator and the total amount of damages for all Plaintiffs as a denominator. The Net Settlement Amount was then multiplied by the percentage for each Plaintiff to determine each individual Plaintiff's Settlement Award.

Class Counsel's attorneys' fees and costs will each be distributed in a single check that will be reported on an IRS Form 1099. Likewise, Hernandez's Service Award will be distributed in a single check that will be reported on an IRS Form 1099.

### c.  Release of Claims Against CRSC.

Any Plaintiff or Opt-in Plaintiff who participates in the settlement will receive their settlement payment and will release CRSC from their wage and hour claims. The Settlement Agreement is intended to constitute a complete discharge of any and all FLSA liability of CRSC to Plaintiffs.

### 3.  The Court Should Approve the Parties Settlement.

### a.  The Legal Standard for Approval of FLSA Settlements.

The Parties now seek the Court's approval of their Settlement. The Settlement represents a fair and reasonable compromise of a bona fide dispute concerning the legality of CRSC's compensation practices with respect to Plaintiffs during the relevant time period.

Under the FLSA, covered employers must pay non-exempt employees' overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee… affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Villeda v. Landry's Rests., Inc.*, No. H–08–2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *see also Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012) (Private settlement agreement entered into by union and film producer was a valid release of union members' claims for unpaid wages under FLSA). "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Villeda*, 2009 WL 3233405, at *1 (quoting *Lynn's*, 679 F.2d at 1354). When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions. *See Lynn's Food Stores*, 679 F.2d at 1355.

### b. The Court Should Approve the Parties' Settlement.

#### i. The Settlement Resolves a Bona Fide Dispute.

The Court can approve a settlement where there is a "bona fide dispute" amongst the parties. See, e.g., *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 163 (5th Cir. 2015). The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim. *Dardar v. Pit Stop Eatery of Houma, LLC*, No. CV 20-1605, 2021 WL 5508631, at *1 (E.D. La. Mar. 29, 2021); *Sims v. Hous. Auth. of City of El Paso*, No. EP-10-CV-109-KC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011). "An actual dispute over the amount of overtime compensation due to an employee [can be] sufficient to create a bona fide dispute for purposes of this factor." *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *1 (S.D. Tex. Jan. 31, 2018); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 723 (E.D. La. 2008) ("the Court finds that there are legitimate questions over coverage under FLSA, and even more so over the computation of back wages of individual employees, such that there is a "bona fide dispute" over FLSA coverage that justifies settlement of the plaintiffs' claims").

There is no question a bona fide dispute in this matter exists between the Parties. Here, the Parties contested the claims and defenses asserted in the Lawsuit. Plaintiffs alleged CRSC failed to the Plaintiffs overtime, instead paying them a piece rate and per diem regardless of the hours worked in a workweek. CRSC argued that the Plaintiffs were paid properly. Further, Plaintiffs argued that they were similarly situated in the terms of relevant job duties and compensation practices, regardless of the job position, length of time, or location worked for CRSC, while CRSC maintained that the Plaintiffs were not similarly situated and that their claims should be tried independently of one another. The Parties further disagreed on whether Plaintiffs could satisfy their burden to demonstrate that CRSC acted willfully, which in turn affects whether they could recover compensation for two (2) years

or three (3) years. *See* 29 U.S.C. § 255. Plaintiffs also contend that CRSC would not be able to meet their burden to prove that CRSC acted in good faith in compensating Plaintiffs, which would implicate the amount, if any, of liquidated damages. *See* 29 U.S.C. § 260. CRSC maintained that it acted in good faith, and not willfully, so that damages (if any) should not include liquidated damages and could only be recovered for a two-year period.

The Parties have fully analyzed the pertinent factual and legal issues in this case, as well as having assessed the strengths and weaknesses of the claims and defenses at issue. The Settlement was reached after arm's length negotiations. The Parties worked to resolve various complex, disputed issues, such as issues regarding the scope of certification and damage calculations. If this case was not settled, there would undoubtedly be extensive future work to come, including dispositive motions, depositions, associated discovery disputes including possible subpoenas to a substantial number of third-parties, questions regarding applicability of the FLSA, good faith, willfulness, certification, decertification, pretrial motions, trial, and potential appellate issues. Accordingly, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and recognized that their settlement represented a compromise of the range and uncertainty of their damages.

Finally, both Hernandez and Class Counsel believe that this settlement is in the best interest of both Hernandez and the Plaintiffs. The Parties disputed whether collective treatment of Plaintiffs' FLSA claims was appropriate in this matter, and whether Plaintiffs were entitled to liquidated damages. If the matter was not resolved by settlement, there is a risk that Plaintiffs would not succeed in pursuing collective treatment of the action. Moreover, the Parties would undoubtedly continue to challenge discovery issues and file motions for summary judgment. This process would have been time-consuming and expensive for all Parties, and should Plaintiffs have ultimately prevailed, the additional time prior to Plaintiffs receiving relief, if any, could have been substantial.

As such, the current Settlement before the Court is the result of a bona fide and contested dispute where serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt. Without the Parties' willingness to engage in settlement discussions, this case would have not been resolved.

### ii.  The Terms of the Settlement are Fair and Reasonable.

"There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, Case Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). In addition, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

Here, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Counsel for all Parties have considerable experience in prosecuting, defending, and settling federal and state wage-and-hour claims, and in this case were particularly well informed as to the facts and circumstances of the Lawsuit after extensive formal and informal discovery on all issues over the life of this litigation. *See Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (internal citations omitted); *Shaw v. CAS, Inc.*, No. 5:17- cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (preliminarily approving settlement where counsel believed settlement was reasonable and adequate based on "comprehensive knowledge of the facts and legal issues"); *see also Austin v. Pa. Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a

proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus.*, Inc., 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

The Parties have been litigating this case since March of 2021. The Parties conducted discovery, disputed damages, and liability which informed the Parties' respective positions on all issues in this case. And after the Parties reached an agreement in principle, the Parties engaged in further negotiations concerning the specific terms of the settlement and the scope of the Agreement. Indeed, it cannot be said that the settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations. Specifically, the time period covered by the settlement runs from three years prior to the filing of each Plaintiff's consent through the execution of the settlement agreement. Further, it is important to note that Hernandez, the representative plaintiff on behalf of his former coworkers, deems this settlement fair and reasonable. This is the agreement that the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) ("[T]he court cannot modify the bargained-for terms of the [class-action] settlement agreement.").

### 4. The Attorney's Fees and Costs are Reasonable.

Class Counsel's attorneys' fees under the Settlement Agreement is reasonable, fair and an important provision of the Parties' agreement. The FLSA provides "[t]he court … **shall**, in addition

to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); Class Counsel's request for a 40% contingency fee is also fair and reasonable and CRSC does not oppose such an award. The Fifth Circuit recognizes that a contingency fee is desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012). Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006). In FLSA cases such as this, the "customary contingency" in the Fifth Circuit is within the range of 35% to 40%. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (awarding a 40% contingency fee award in an FLSA matter); *Wolfe v. Anchor Drilling Fluids USA, Inc.*, Case No. 4:15-cv-1344 (S.D. Tex. Dec. 7, 2015) (Hoyt, J.) (40% fee); *Legros v. Mud Control Equip., Co.*, No. CV 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *Heffernan Bryant v. United Furniture Indus., Inc.*, No. 1:13CV246-SA-DAS, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (same); courts routinely approve settlements that includes an agreed upon fee equal to 40% of the common fund (in very similar litigation); *see also Nigh, et al. v. Energy Professionals Group, LLC, et al.*, No. 4:18-cv-01103, Doc. 89 (S.D. Tex. Mar. 11, 2020); *Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) (approving settlement agreement and 40% attorneys' fees in a case involving drilling consultants paid a day-rate); *Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) (approving 40% fee in settlement for workers allegedly misclassified as independent contractors); *Brite v. Great Plains Analytical Services, Inc.*, No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) (approving 40% fee in FLSA settlement); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), *adopted*, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (same); *Sarabia v. Spitzer Industries, Inc.*, No. 4:17-cv-02092, at ECF No. 32 (S.D. Tex. May 24, 2018) (same); *see also*

*Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%).

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). The parties reached the agreed upon fee after reaching a settlement that dwarfs the average overtime settlement, ensures class members who decide to accept it will be paid promptly, and does not require those who wish to retain their claims to do anything. To the extent approval is necessary, it should be given here.

Further, this is the agreement the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement). Courts have found that "any process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more

deferential than resolving attorneys' fees in a disputed case." *See, e.g., Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action).

The Parties have been pursuing this matter since March 2021. Discovery, discussions, and briefing occurred on every issue in this case ranging from stipulated certification, exemption defenses, and damages. Plaintiffs' Counsel has spent considerable time prosecuting this matter. All Parties, including the Representative Plaintiff, believes Class Counsel's fee as set forth in the Settlement Agreement is reasonable and necessary in this case (in addition to Class Counsel's request for reimbursement for reasonable and necessary expenses associated with prosecuting this matter as set forth in the Agreement).

### 5. The Court Should Approve Hernandez's Service Award.

Hernandez's requested service award is reasonable, and CRSC does not object to the same. Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See, e.g., Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff). The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement.

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in

pursuing the litigation, and reasonable fears of retaliation. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016).

The proposed service award to Hernandez is reasonable and consistent with service awards approved by other courts, and CRSC does not oppose this amount. The service award represents a nominal amount of the Gross Settlement Amount and is intended to recognize Hernandez's initiative and efforts on behalf of the Plaintiffs and the time and effort he contributed to this lawsuit and the settlement over the last year. Indeed, Hernandez took a substantial risk in bringing the claims relating to CRSC's alleged FLSA violations. In doing so, Hernandez faced potential retaliation and blackballing from prospective employers who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages. Moreover, Hernandez expended significant effort and time in educating Class Counsel regarding the CRSC's employee's job experiences, compensation, and hours worked, as well as CRSC's policies and procedures. Likewise, Hernandez assisted throughout the litigation by providing documents and information related for the services he provided CRSC, helping negotiate the stipulated certification to help the Opt-in Plaintiffs receive notice of their opportunity to join this collective action, and participating in settlement discussions and the settlement approval process to help ensure the Plaintiffs recover their alleged unpaid wages. Hernandez also participated in numerous telephone conferences with Class Counsel and their staff over the course of the litigation.

Because Hernandez took significant personal risks in representing the interests of the Opt-in Plaintiffs and worked diligently to ensure they could recover the wages they are allegedly due, the proposed service award agreed to by the Parties is reasonable to compensate him for these inherent risks and his substantial efforts on behalf of the Plaintiffs.

### 6.  Conclusion

The Parties believe that the terms and conditions of the Agreement are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, this proposed Agreement was reached following the exchange of information and data obtained from CRSC and after extensive negotiations. The Settlement provides CRSC with the highest possible absolution to resolve the pay practice at issue. Because of the various defenses asserted by CRSC and the possibility that CRSC may have successfully defeated or limited some or all of Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement this case would have proceeded to lengthy and drawn-out litigation, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

The Parties hereby request that the Court: (1) approve this settlement, including all of the terms set forth in the Agreement; (2) direct the Parties to implement the settlement process as set forth in the Agreement; and (3) dismiss the claims of Plaintiffs with prejudice.

Dated: May 9, 2023                                             Respectfully submitted,


*/s/ Andrew W. Dunlap*                                         */s/ Justin J. Boron*
Michael A. Josephson                                          Justin J. Boron
Andrew W. Dunlap                                              Attorney ID Number: 33023
**JOSEPHSON DUNLAP**                                          **FREEMAN MATHIS & GARY, LLP**
11 Greenway Plaza, Suite 3050                                 1600 Market Street, Suite 1210
Houston, TX 77046                                             Philadelphia, PA 19103
Tel.: 713-352-1100                                            Phone: (215) 789-8072 / (215) 789-8078
Fax: 713-352-3300                                             JBoron@fmglaw.com
mjosephson@mybackwages.com                                    *Attorneys for Defendant*
adunlap@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, TX 77046
Tel.: 713-877-8788
Fax: 713-844-8065
rburch@brucknerburch.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known

parties on May 9, 2023.

*/s/ Andrew W. Dunlap*
Michael Josephson